**Ellen P. McDONALD et al., Plaintiffs,**

**v.**

**John McLUCAS, Acting Secretary of the Air Force, et al., Defendants.**

**No. 73 Civ. 3190.**

United States District Court,
S. D. New York.

Feb. 13, 1974.

See also D.C., 371 F.Supp. 837.

Kaplan, Kilsheimer & Foley, New York City, for plaintiffs; Dermot G. Foley, R. Alan Stotsenburg, New York City, of counsel.

Paul J. Curran, U. S. Atty., S. D. N. Y., Foley Square, N. Y., for defendants; Howard S. Sussman, Naomi L. Reice, Asst. U. S. Attys., of counsel.

Before TIMBERS, Circuit Judge, and METZNER and BRIEANT, District Judges.

METZNER, District Judge:

This three-judge court was convened pursuant to 28 U.S.C. §§ 2282 and 2284 to consider plaintiffs' challenge to the constitutionality of Sections 555 and 556 of Title 37 of the United States Code which govern the circumstances under which American armed forces personnel missing in action may be declared dead. The opinion granting the convocation of this court is appended hereto.

Plaintiffs seek a declaratory judgment of unconstitutionality, an injunction prohibiting the defendants from making any further determinations of death, and an

order directing the payment of damages for prior determinations.

The five named plaintiffs are officially designated "primary next of kin" and "designated beneficiaries" of members of the Armed Forces who were on active duty in Indochina and who are presently being carried as missing in action by the defendants. The defendants are the respective Secretaries of the Air Force, Army and Navy.

Sections 555 and 556 are found in Chapter 10 of Title 37 of the United States Code which is entitled "Payments to Missing Persons." This Chapter was enacted solely for the purpose of affording some financial support for the families of missing members of the Armed Forces during the time their fate was unknown. Bell v. United States, 366 U.S. 393, 408, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961). These sections in question provide for two types of determinations of death by the Secretary or his designee. The first is an "official report of death," which a Secretary may make upon the receipt of "information" which "establishes conclusively the death of a member of a uniformed service." Section 556(b). The second is a "finding of death," which a Secretary may make when he considers that "the information received, or a lapse of time without information, establishes a reasonable presumption that a member in a missing status is dead." Section 556(b). Plaintiffs are attacking the constitutionality of both types of determinations.

Section 555 provides for the review of the status of any missing service member no later than twelve months after an individual has been declared officially missing. When that review is completed, the member is either continued in the missing status if he can "reasonably be presumed to be living" (Section 555(a)(1)), or a "finding of death" is made based on his absence for a year and the lack of any conclusive information as to his whereabouts. Under Sections 555 and 556, both an "official report of death" and a "finding of death" are deemed "conclusive on all oth-

er departments and agencies of the United States."

In practice, the various services have established informal boards or councils to conduct the review of a missing member's status in accordance with Section 555(a). After completion of this review, the board makes a recommendation as to whether either of the types of determinations of death should issue, or whether the member should continue to be carried in a missing status. The Secretary or his designee then reviews the recommendation of the board and issues the final determination.

■ The threshold issue which we must resolve is whether this suit may be maintained as a class action. It is brought on behalf of "all next-of-kin, both in their capacity as representatives of their respective MIA's and with respect to their individual interests." MIA is defined by the complaint as a member of the Armed Forces "who, at any time during the period beginning January 1, 1962 to final judgment in this action, was in a 'missing status' while on active duty in Indochina . . . ." Thus, the class would include members whose missing status was changed by a determination of death made anytime since January 1962.

First, none of the named plaintiffs are proper representatives of the group of military personnel who have previously been declared dead under Sections 555 and 556. They could only represent those "designated next-of-kin" of members who are still missing.

As far as the remainder of the purported class is concerned, the issue of the constitutionality of these statutes can be raised and determined in an action for a declaratory judgment and injunctive relief without the necessity of a class action. A class action here would be largely a formality. "[W]hat is important in such a case . . . is that the *judgment* run to the benefit not only of the named plaintiffs but of all others similarly situated." Galvan v. Levine, 490 F.2d 1255 (2d Cir. December 3, 1973) at 1261. A favorable judgment

here would obviously accomplish this result. The court can properly assume that an agency of the government would not persist in taking actions which violate the rights of a service member's next of kin, if the statutes are declared unconstitutional. Tyson v. New York City Housing Authority, 369 F.Supp. 513 (S.D.N.Y., January 9, 1974), cf., Vulcan Society v. Civil Service Commission of the City of New York, 490 F.2d 387 (2d Cir. November 21, 1973).

Plaintiffs' primary claim is that these statutes are unconstitutional on their face and as applied because they authorize the Secretaries to make determinations of death without providing a prior hearing or notice of a proposed status change to the next-of-kin in violation of the due process clause of the Fifth Amendment.

■ It is a well established principle that procedural due process is required in administrative proceedings when adjudications of fact are made which operate to deprive a person of a constitutionally protected interest. Hannah v. Larche, 363 U.S. 420, 80 ·S.Ct. 1502, 4 L.Ed.2d 1307 (1960), Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (1938).

■ There is no question that an "official report of death," or a "finding of death" made by the defendants is an adjudication of fact.

■ As to whether plaintiffs have a constitutionally protected interest, one must look to the "nature of the interest at stake" in order to see if it falls within the ambit of the Fifth Amendment's protection of life, liberty and property. Board of Regents v. Roth, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). Plaintiffs here receive monthly payments while a member is carried in a missing status. It is clear from recent opinions of the Court that the plaintiffs have a property interest at stake in the continuation of the entitlements granted to them under Sections 555 and 556 which is sufficient to invoke constitutional protec-

tion. See, e. g., Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); cf., Board of Regents v. Roth, supra at 571, 92 S.Ct. 2701, 33 L.Ed.2d 548; Goldsmith v. Board of Tax Appeals, 270 U.S. 117, 46 S.Ct. 215, 70 L.Ed. 494 (1926). Just as the welfare recipient's "property" interest in welfare payments in Goldberg "was created and defined by statutory terms," so, too, the plaintiffs' "property" interest in the continuation of a missing member's pay and allowances has been created and defined by statutory terms. Board of Regents v. Roth, supra at 578, 92 S.Ct. 2701, 33 L.Ed.2d 548.

■ Defendants contend that the plaintiffs have not been deprived of any protected property interest because if a missing service member is actually still alive after a determination of death is made, any lost wages and allotments can be recovered under Section 556(d). This claim is without merit. It is "now well settled that a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment. . . . The Fourteenth Amendment draws no bright lines around three-day, 10-day or 50-day deprivations of property." Fuentes v. Shevin, 407 U.S. 67, 84–85, 86, 92 S.Ct. 1983, 1996, 32 L.Ed.2d 556 (1972).

Having concluded that the plaintiffs have a "property" interest at stake, the due process clause demands that some form of procedural protection is required. See, e. g., Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In a line of Supreme Court decisions emanating from Hannah v. Larche, supra, it has been held that notice and an opportunity to be heard must be afforded before an individual can be deprived of a protected interest. See also, Board of Regents v. Roth, supra at 569–570, 92 S.Ct. 2701, 33 L.Ed.2d 548; Fuentes v. Shevin, supra at 82, 92 S.Ct. 1983, 32 L.Ed.2d 556; Bell v. Burson, 402 U.S. 535, 542, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); Wis-

consin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); Goldberg v. Kelly, *supra* at 261, 90 S.Ct. 1011, 25 L.Ed.2d 287. While the exact contours of these procedural elements vary according to the interests involved (*see, e. g.*, Christian v. New York State Department of Labor, 414 U.S. 614, 94 S.Ct. 747, 39 L.Ed.2d 38 (January 21, 1974)), the Court has repeatedly insisted that rudimentary due process is satisfied only by providing the "kinds of 'notice' and 'hearing' that are aimed at establishing the validity" of the deprivation in question. Fuentes v. Shevin, *supra* at 97, 92 S.Ct. 1983, 32 L.Ed.2d 556, quoting Sniadach v. Family Finance Corp., 395 U.S. 337, 343, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (Harlan, J. concurring); Bell v. Burson, *supra* at 540, 91 S.Ct. 780, 29 L.Ed.2d 90.

■ These rudimentary procedural guarantees are absent from the face of the instant statutes. In addition, the stipulated statement of facts reveals that the services do not have any regulations requiring, and in fact, do not give, next-of-kin specific notice of the time and place of a review which might result in an "official report of death" or a "finding of death." The services also do not permit next-of-kin to attend or participate formally in any review or proposed status change.

■ Despite the foregoing, the defendants offer two arguments why they believe that their method of operation under Sections 555 and 556 fully comports with the due process requirements of the Fifth Amendment. First, they state in their brief that "the hearing the statute provides supplies all the process that is due." The court has searched the statute in vain for a provision granting any form of hearing. We cannot accept the defendants' claim that the informal communication which takes place between the services and the next-of-kin as to the status of a missing member constitutes an informal hearing which satisfies even the most basic elements of due process.

■ Defendants' second argument is that no notice or hearing is required because any deficiencies in the statutory proceedings can be cured by subsequent judicial review. Assuming, *arguendo*, that such review is even available under this statute (*see,* Moreno v. United States, 93 F.Supp. 607 (Ct.Claims 1950), cert. denied, 342 U.S. 814, 72 S.Ct. 29, 96 L.Ed. 616 (1951); *cf.,* Ferrer v. United States, 140 F.Supp. 954 (Ct. Claims 1955)), it would not cure the constitutional deprivation of property which inheres in a proceeding conducted without due process. As the Court observed in Stanley v. Illinois, 405 U.S. 645, 647, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972): "This Court has not . . . embraced the general proposition that a wrong may be done if it can be undone." *See also,* Fuentes v. Shevin, *supra* at 82, 92 S.Ct. 1983, 1210, 32 L.Ed.2d 556.

Defendants' contention that the plaintiffs are barred from pressing their instant claims because of the traditional reluctance of the judiciary to intervene in the affairs of the military is without merit. They rely chiefly on the dicta in Orloff v. Willoughby, 345 U.S. 83, 93, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953), which states that "judges are not given the task of running the Army." *Orloff* and its progeny (United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371 (2d Cir. 1968), cert. denied, 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969), and Luftig v. McNamara, 126 U.S.App.D.C. 4, 373 F.2d 664, cert. denied, 387 U.S. 945, 87 S.Ct. 2078, 18 L.Ed.2d 1332 (1967)), however, do not preclude judicial consideration of military statutes when protected interests are at stake or when plaintiffs have alleged "judicially cognizable injuries." Harmon v. Brucker, 355 U.S. 579, 582, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958); *cf.,* Gilligan v. Morgan, 413 U.S. 1, 11–12, and n. 16, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973).

Defendants' final argument that the court should not adjudicate the instant suit because the statutes in issue are concerned with military pay is similarly

unpersuasive. Rodgers v. United States, 185 U.S. 83, 22 S.Ct. 582, 46 L.Ed. 816 (1902), upon which defendants rely, involved a serviceman's action to recover moneys due him from the Navy. In the face of conflicting pay statutes, the Court held that the case "involve[d] a mere question of statutory construction." In dicta, it also stated that "[t]he matter of military and naval salaries is one exclusively within the control of Congress," and "[t]he courts may neither increase nor decrease them . . . ." *Id.* at 86, 22 S.Ct. at 583. In contrast, plaintiffs here are challenging the constitutionality of the procedures used in connection with determinations of death. They are not seeking to increase or modify the statutory entitlements which they are receiving.

The defendants have established no conecivable interest on their part in the continuation of these determinations without the procedural safeguards required by the Fifth Amendment. In fact, the only justification they have offered in opposition to providing plaintiffs with a hearing is an alleged financial burden which will result. The nub of this claim is that by requiring a hearing before a member's payments may be terminated, the proceedings will be prolonged and the government will have to continue to make the statutory payments beyond the time they normally would cease. This objection is wholly without merit. The Court has recognized time and again that a financial burden on the administrative agency does not negate its obligations to comply with the due process clause. *See, e. g.,* Goldberg v. Kelly, *supra* at 261, 90 S.Ct. 1011, 25 L.Ed.2d 287; Bell v. Burson, *supra* at 540–541, 91 S.Ct. 1586, 29 L.Ed.2d 90; *cf.,* Richardson v. Perales, 402 U.S. 389, 406, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

While we conclude that the defendants' actions in making "official reports of death" and "findings of death" under Sections 555 and 556 are constitutionally defective, we do not prescribe the exact form of the procedures which the defendants must now take. *See* Morrissey v. Brewer, *supra* at 489–490, 92 S.Ct. 2593, 33 L.Ed.2d 484; Fuentes v. Shevin, *supra* at 96–97, 92 S.Ct. 1983, 32 L.Ed.2d 556; Bell v. Burson, *supra* at 542–543, 91 S.Ct. 780, 29 L.Ed.2d 90. We only hold that under minimum due process standards notice must be given of a status review and the affected parties afforded a reasonable opportunity to attend the review, with a lawyer if they choose, and to have reasonable access to the information upon which the reviewing board will act. Finally, they should be. permitted to present any information which they consider relevant to the proceeding. Once that is done, the requirements of due process have been satisfied.

In arriving at this conclusion, we wish to point out that any change in procedures which the defendants must make in order to conform with this decision need only be applied to those next-of-kin who demand it after notice. Such a result is dictated by the peculiar circumstances surrounding this case. With the repatriation of American prisoners of war which followed the signing of the Paris Peace Accord on January 28, 1973, an emotional breach has occurred among the families of missing servicemen who did not return home. On the one hand, we find families like the plaintiffs who understandably still hope for the return of their loved ones, and who actively contest any change in a missing status finding. On the other hand, there are those who have accepted the apparent fate of death as to their relatives, and who desperately want the services to make immediate determinations of death so that emotionally and actually they might begin their lives anew.

The anguish of each of these opposing groups has been intense and is reflected in communications to the court. The court believes that it can—and indeed must—accommodate the interests of both groups of families without sacrificing the constitutional rights of any individual.

In view of the court's disposition of the procedural due process attack against Sections 555 and 556, the additional grounds urged for declaring the sections unconstitutional need not be considered.

Accordingly, Sections 555 and 556 of Title 37 of the United States Code are declared unconstitutional on their face and as applied insofar as they permit "official reports of death" and "findings of death" to be made without affording the next-of-kin notice and an opportunity to be heard, and the defendants are permanently enjoined from making such determinations except in conformance with this opinion.

Submit decree on notice.