Earl P. HOPPER, Jr., by his father and next friend, Earl P. Hopper, Sr., Michael J. Bosiljevac, by his wife, next friend and Conservator-Guardian, Mary K. Bosiljevac, Robert A. Brett, Jr., by his father, next friend and Guardian-Conservator, Robert A. Brett, Sr., Nicholas G. Brooks, by his father and next friend, George L. Brooks, Sheldon D. Schultz, by his father, next friend and Trustee (Guardian), George A. Schultz, Donald E. Shay, Jr., by his father, next friend and Guardian, Donald E. Shay, Sr., Jonathan B. Bednarek, by his father and next friend, John Bednarek, Vincent A. Chiarello, by his mother and next friend, Anne Chiarello, Joseph Peter Fanning, by his wife and next friend, Linda Fanning, Paul O. Meder, by his wife and next friend, Jane M. Meder, John F. O'Grady, by his father and next friend, John M. O'Grady, Leonard Robertson, by his father and next friend, Struan Robertson, Philip Craig, by his brother and next friend, John P. Craig, Brent E. Davis, by his father and next friend, Russell H. Davis, Jr., Harley H. Hall, by his wife and next friend, Mary Louise Hall, Donald F. Lindland, by his wife and next friend, Barbara Ann Lindland, James M. Rozo, by his father and next friend, Samuel Rozo, Charles E. Shelton, by his wife and next friend, Dorothy M. Shelton, Robert L. Standerwick, by his wife and next friend, Carolyn Standerwick, Michael B. Varnado, by his father, next friend and Curator (Guardian), Housley Varnado, and Milton J. Vescelius, by his wife and next friend, Jeanene Vescelius, Plaintiffs-Appellants,

v.

James E. CARTER, Jr., President of the United States, Harold S. Brown, Secretary of Defense, John C. Stetson, Secretary of the Air Force, Clifford L. Alexander, Secretary of the Army and W. Graham Claytor, Jr., Secretary of the Navy, Defendants-Appellees.

No. 668, Docket 77–6179.

United States Court of Appeals, Second Circuit.

Argued Feb. 16, 1978.

Decided March 10, 1978.

Dermot G. Foley, New York City (Kaplan, Kilsheimer & Foley and John A. K. Bradley, New York City, on the brief), for plaintiffs-appellants.

Elaine C. Buck, Asst. U. S. Atty., Brooklyn, N. Y. (David G. Trager, U. S. Atty., E. D. N. Y., and Mary McGowan Davis, Asst.

U. S. Atty., Brooklyn, N. Y., on the brief), for defendants-appellees.

Before MEDINA, LUMBARD and GUR-FEIN, Circuit Judges.

PER CURIAM:

Earl P. Hopper, Jr., and twenty other servicemen, who have been listed as captured or missing in action in Southeast Asia, and who either have been or are about to be subject to determinations of death under the Missing Persons Act, 37 U.S.C. §§ 555 and 556, appeal—by their parents or "next friends"—from a September 29, 1977, order of the Eastern District of New York. By that order, Judge Weinstein denied plaintiffs' motion for a preliminary injunction staying the President and the highest officials in the Department of Defense from instituting or continuing the statutory procedures for such determinations of death. We affirm.

Status reviews of missing servicemen under the statute were suspended in mid-1973, except where requested by next of kin; in August of 1977, the government announced that it would resume such reviews. Appellants seek an injunction against this resumption on the grounds that the statutory provisions are unconstitutional on their face and as applied because they fail to afford to the representatives of the missing persons notice of the forthcoming review and an opportunity to be heard.

While not specifically addressing the question whether the missing persons or their representatives were entitled to some form of notice, litigation before a three-judge court in the Southern District of New York established that due process would be satisfied by a system whereby the next of kin of missing servicemen would be notified of the impending review and given a chance to contest a determination of death if they were currently receiving government financial benefits as a result of their relationship to the MIA. *McDonald v. McLucas*, 371 F.Supp. 831 (S.D.N.Y.) (3-judge court), *aff'd mem.*, 419 U.S. 987, 95 S.Ct. 297, 42 L.Ed.2d 261 (1974). The defects that the *McDonald* court found to exist in the statutory proce-dures were promptly remedied by Service Regulations adopted April 22, 1974, which provided for notification to next of kin receiving financial benefits that:

a) The status of the MIA member was to be reviewed on a certain date;

b) The next of kin would be afforded a reasonable opportunity to attend the review hearing with a privately retained civilian attorney if they chose;

c) They would have reasonable access to information upon which the status review would be based; and

d) They would be permitted to present any information which they considered relevant to the proceedings.

See *Crone v. United States*, 538 F.2d 875, 885 n.6 (Ct.Cl.1976).

Moreover, in the four-year period between the discontinuance and the resumption of status reviews, investigations and inquiries were conducted by both the executive branch and the House of Representatives to ensure that all means were being exhausted to establish the whereabouts and fate of American servicemen missing in Southeast Asia.

In his opinion, Judge Weinstein observed that the government had always been most generous in its treatment of those missing servicemen declared dead who had been fortunate enough to return; in such cases, payments were made to the returning persons for the entire time for which they had been missing. (We note that no case of the return of a serviceman declared dead that has been cited to us is more recent than 1973.) Judge Weinstein indicated that there was no reason to believe that the government's generous policy would not be continued.

In view of all the foregoing, Judge Weinstein concluded, after a four-day hearing, that appellants had not succeeded in showing the likelihood either of success on the merits or of irreparable harm to them in the event of the denial of the injunction. In fact, the court indicated that a motion for summary judgment by the government would be granted. We agree with Judge

Weinstein's assessment of both the chances of success on the merits and the prospect of irreparable injury.

There is nothing that the government of a grateful people can ever do fully to compensate or comfort the next of kin of those who have given "the last full measure of devotion," and for whom there is no hope of return. But it is beyond dispute that the government now provides every opportunity for the discovery and consideration of any evidence militating against a determination of death. The government is acting generously and compassionately in sparing no pains to ascertain as conclusively as possible what has actually happened to those missing in action before reaching any determination adverse to their interests or those of their next of kin. The conclusion is inescapable that the measures taken by the government suffice to defeat any claim that the constitutional rights of the plaintiffs are being or may be violated.

Affirmed.