**Raymond LEE, Individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**The BOARD OF HIGHER EDUCATION IN the CITY OF NEW YORK; Robert J. Kibbee, Individually and in his capacity as Chancellor of the City University of New York; Mary P. Bass, Individually and in her capacity as General Counsel and Vice Chancellor for Legal Affairs of the City University of New York, Defendants.**

No. 78 Civ. 5250–CSH.

United States District Court, S. D. New York.

Nov. 21, 1979.

---

Carol Kellermann, The Legal Aid Society, New York City, for plaintiffs.

Pamela McGovern Gaskins, Asst. Corp. Counsel, Law Dept., New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This putative class action arises out of the following undisputed facts: In 1971 the named plaintiff, Raymond Lee, borrowed $500 in the form of a National Direct Student Loan (NDSL)[1] to help defray his expenses for attendance at City College, which is part of City University of New York (CUNY). In 1973, Mr. Lee withdrew from school, after completing 32 credits, and commenced repayment of the loan. In 1975, after having paid all but $107 of the loan, Mr. Lee lost his job. He gained employment once again six months later, but in the interim period of unemployment, he incurred debts of several thousand dollars. In February 1978, Mr. Lee filed a bankruptcy petition, listing liabilities of over $2,000, including the outstanding balance on his student loan. In May 1978, Mr. Lee re-

ceived a discharge in bankruptcy of all dischargeable debts listed in his petition, including the balance of the City College loan. In June 1978, Mr. Lee was accepted as a B.A. candidate at New York Theological Institute. The Institute agreed to give Mr. Lee advanced standing for the 32 credits he had completed at City College, provided that Mr. Lee produce a transcript of the course work he had completed. Pursuant to CUNY's policy of denying transcripts to individuals who have defaulted on payment of student loans obtained from CUNY notwithstanding their discharge in bankruptcy, Mr. Lee was advised in a letter from the General Counsel and Vice Chancellor for Legal Affairs of City University that his record would not be released. In the face of such a policy, Mr. Lee was faced with the prospect of repeating 32 credits of work already completed in order to qualify for the B.A. degree from the New York Theological Institute.

Plaintiff commenced this action, seeking certification of a class, pursuant to Rule 23, Fed.R.Civ.P., consisting of all persons to whom the Board of Higher Education in the City of New York has refused to provide copies of their college records as a consequence of their failure to repay student loans obtained from CUNY despite the discharge of these loans in bankruptcy. The plaintiff also seeks, pursuant to Fed.R. Civ.P. 56 and 65, summary judgment enjoining the enforcement, operation and execution of the defendant's policy on the ground that it violates the supremacy clause, Art. VI, cl. 2, of the United States Constitution, and the equal protection and due process clauses of the Fourteenth Amendment. For the following reasons, this Court has determined that the relief so requested should be granted.

### I.

### CLASS CERTIFICATION

In order to reach a determination on the issues in this case, it is important, as a

---

1. The NDSL program provides needy students with financial assistance. Under NDSL, the federal government furnishes 90% of the loan, the university provides the remaining 10%, and the university is charged with collection. 20 U.S.C. § 1087aa *et seq.* (1976); 45 C.F.R. § 144 *et seq.* (1978).

preliminary matter, to have an understanding of the changing law on the subject of the dischargeability of student loans.

Recently Congress has enacted a special statute, limiting the conditions under which student loans may be discharged in bankruptcy. Education Amendments of 1976, § 439A, 20 U.S.C. § 1087–3 (1976) (repealed Pub.L. 95–598, Title III, § 317, Nov. 6, 1978, 92 Stat. 2678) (current version in 11 U.S. C.A. § 523(a)(8) (1979 Supp.) (effective Oct. 1, 1979)).[2] Prior to September 30, 1977, the effective date of the 1976 amendments, educational loans were classified along with most other debts and ordinarily were discharged in bankruptcy. Recognizing the problem of widespread abuse of discharges of student loans, Congress enacted the Education Amendments of 1976, which applied to bankruptcy proceedings commencing on or after September 30, 1977. It excepted federally insured or guaranteed student loans from discharge unless a situation of "undue hardship" presented itself, or unless the loan had been in arrears for a minimum of five years. The new bankruptcy law, which applies to bankruptcy proceedings commencing on or after October 1, 1979, adopted this approach and expanded on it: it excepts from discharge any debt to a governmental unit as well as to a nonprofit institution of higher education for an educational loan unless the loan has been outstanding for five years or unless excepting the debt from discharge will impose an "undue hardship."

In this case, plaintiff seeks certification, pursuant to Fed.R.Civ.P. 23(a), and either 23(b)(2) or 23(b)(1)(A), of the class of persons to whom the Board of Higher Education of CUNY has refused to provide copies of their college records as a consequence of their failure to repay educational loans obtained from CUNY despite the discharge of these loans in bankruptcy. Plaintiff's Brief at 1–2.

It should be noted that what is crucial to this litigation and what qualifies a person for membership in the purported class, *inter alia*, is *final discharge* of his or her educational loan by a bankruptcy court, as of the time of entry of this order or subsequent thereto. The bankruptcy courts naturally will be applying the requisite aforementioned statutory provisions; any denial of a discharge of a student loan will be contested in the context of a bankruptcy proceeding. Therefore, membership in this putative class requires the entry by a bankruptcy court of a final discharge of a student loan along with a refusal by CUNY to release college records as a consequence of the failure to repay the discharged loan.

The defendants' principal contention is that certification under Rule 23(b)(2) should be denied, since it is unnecessary to main-

---

2. The Education Amendments of 1976 include:

"Sec. 439A. (a) A debt which is a loan insured or guaranteed under the authority of this part may be released by a discharge in bankruptcy under the Bankruptcy Act only if such discharge is granted after the five-year period (exclusive of any applicable suspension of the repayment period) beginning on the date of commencement of the repayment period of such loan, except that prior to the expiration of that five-year period, such loan may be released only if the court in which the proceeding is pending determines that payment from future income or other wealth will impose an undue hardship on the debtor or his dependents.

"(b) Subsection (a) of this section shall be effective with respect to any proceedings begun under the Bankruptcy Act on or after September 30, 1977."

20 U.S.C. § 1087–3 (1976) (repealed Pub.L. 95–598, Title III, § 317, Nov. 6, 1978, 92 Stat. 2678)

(current version in 11 U.S.C.A. § 523(a)(8) (1979 Supp.) (effective Oct. 1, 1979)).

The new Bankruptcy Act, 11 U.S.C.A. § 523(a)(8) (1979 Supp.) (effective Oct. 1, 1979), provides:

"§ 523. Exceptions to discharge

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

"(8) to a governmental unit, or a nonprofit institution of higher education, for an educational loan, unless—

"(A) such loan first became due before five years before the date of the filing of the petition; or

"(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents . . . ."

tain a class action in cases in which declaratory or injunctive relief is sought because of the alleged facial unconstitutionality of a federal or state practice. Although this rule obtains in some circuits, *see, e. g., Ihrke v. Northern States Power Co.*, 459 F.2d 566, 572 (8th Cir. 1972), *vacated on other grounds and remanded with instructions to dismiss as moot*, 409 U.S. 815, 93 S.Ct. 66, 34 L.Ed.2d 72 (1972), the rule appears to be otherwise in the Second Circuit.

Defendants' reliance on *Galvan v. Levine*, 490 F.2d 1255, 1261–62 (2d Cir. 1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974) is misplaced. In *Galvan*, the plaintiffs challenged the constitutionality of certain policies of the New York State Industrial Commission with respect to eligibility requirements for unemployment insurance. The Court denied plaintiffs' motion for class certification under Rule 23(b)(2), reasoning that since the judgment would run to the benefit not only of the named plaintiffs but also to others similarly situated, class action designation would be "largely a formality." *Id.* at 1261. In *Galvan*, however, the state "made clear that it understands the judgment to bind it with respect to all claimants"; further, before entry of judgment in the case, the state withdrew the challenged policy and stated it did not intend to reinstate the policy. *Ibid.* The defendant's affirmative representation that it would apply any resulting judgment uniformly to all those similarly situated appeared to play a substantial part in the Second Circuit's holding that the denial of class certification was not an abuse of discretion.

In *Davis v. Smith*, 607 F.2d 535 (2d Cir. 1978), the court enjoined defendants from implementing regulations that conflicted with the Social Security Act, but denied plaintiff's motion for class action certification. The *Davis* court, expanding upon the holding in *Galvan*, said:

"We have held that one seeking class action status under Rule 23(b)(2) and 23(c) not only must meet the minimum prerequisites for a class action under Rule 23(a), *but also must present additional reasons for obtaining certification of the class* under 23(b) and 23(c). *Galvan v. Levine*, 490 F.2d 1255, 1261 (2d Cir. 1973) (Friendly, J.) Where retroactive monetary relief is not at issue and the prospective benefits of declaratory and injunctive relief will benefit all members of a proposed class to such an extent that the certification of a class would not further the implementation of the judgment, a district court *may* decline certification." *Id.* at 540 (emphasis added).[3]

In *Hurley v. Ward*, 584 F.2d 609 (2d Cir. 1978), the court, issuing a preliminary injunction prohibiting anal and genital searches without probable cause of plaintiff inmate but denying certification of a class consisting of all inmates of a New York State correctional facility, clarified the issue of whether, absent a showing of need, the district court may or must deny certification. The *Hurley* court said:

"In *Galvan* and in other similar decisions, the constitutionality of a statute or administrative practice was in issue and the State conceded that the same legal question was posed by the application of the challenged statute or practice to all those within the purported class. Since it is ordinarily assumed that State officials will abide by the court's judgment, where the State has admitted the identity of issues as to all potential class litigants class certification is indeed unnecessary." *Id.* at 611 (footnote omitted).

The distillation of this Second Circuit authority would appear to be that where state authorities commit themselves in the litigation to apply a resulting judgment uniformly, or where they affirmatively concede the identity of the issues as to all potential class

**3.** The Second Circuit vacated its decision in *Davis* on February 23, 1979, and remanded the case to the District Court, in response to a suggestion that its decision was inconsistent with the Supreme Court's decision in *Quern v. Mandley*, 436 U.S. 725, 98 S.Ct. 2068, 56

L.Ed.2d 658 (1978). *Quern* addresses the merits of the issues, and not the question of class certification; hence the Second Circuit's statements in *Davis* on that latter subject may still be regarded as significant.

litigants, there is no practical necessity for a class certification. Conversely, in the absence of such a commitment or concession, class certification. implements the salutary objectives of class litigation.[4]

Class certification in the case at bar finds support in the Advisory Committee Notes to Rule 23, which indicate that it was contemplated that Rule 23(b)(2) would be applied to the instant situation:

"This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature, . . . settling the legality of the behavior with respect to the class as a whole, is appropriate. . . . Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class. Illustrative are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration."

Furthermore, as plaintiff points out, Plaintiff's Reply Memorandum at 2–4, defendants have not always utilized principles of *stare decisis* to extend a federal court injunction in favor of named plaintiffs to other similarly situated persons. *See, e. g., Yaretsky & Foley v. Blum*, 456 F.Supp. 653 (S.D.N.Y.) (order dated Dec. 13, 1977), *aff'd*, 592 F.2d 65 (2d Cir. 1979) (affirming class certification when governmental defendants persisted in illegal practices after con-

demnation by Judge Weinfeld in *Feld v. Berger*, 424 F.Supp. 1356 (S.D.N.Y.1976) (denying class certification on basis of lack of necessity)); *Lewis v. Lavine*, 72 Civ. 4249 (S.D.N.Y. March 6, 1973) (certifying class where defendant failed to comply with earlier order in *Doe v. Lavine*, 347 F.Supp. 357 (S.D.N.Y.1972) (denying class as "unnecessary")); *Kilfoyle v. Heyison*, 417 F.Supp. 239, 243 (W.D.Pa.1976) (class action held necessary where State Department of Motor Vehicles failed to promulgate regulations or follow stipulated procedures in accordance with judgment on same issue in previous identical suit). In my view, the plaintiff and the members of the purported class are entitled to have the full scope of any resulting decree made explicit and unmistakable. *Rodriguez v. Percell*, 391 F.Supp. 38, 41 n.2 (S.D.N.Y.1975). This result, it should be pointed out, will also inure to a defendant's benefit, for if the defendant ultimately succeeds on the merits, it will be spared the burdens of multiple litigation on the issue. *Paddison v. Fidelity Bank*, 60 F.R.D. 695, 697 (E.D.Pa.1973). For this reason, considerations of judicial economy also militate in favor of such an approach.

██ In the instant case, the defendants have failed affirmatively to commit themselves to apply any resulting judgment uniformly to all persons situated similarly to plaintiff. The defendant concedes and the Court is convinced that the Rule 23(a) prerequisites to class certification have been satisfied.[5] Because the defendants have acted on grounds generally applicable to the class, class treatment of the issue raised in this litigation will avoid inconsistent adjudi-

---

**4.** The following courts seem to have adopted the above-stated view: *Becker v. Toia*, 439 F.Supp. 324, 329 (S.D.N.Y.1977); *Bacon v. Toia*, 437 F.Supp. 1371, 1383 and n.11 (S.D.N.Y.1977), *aff'd*, 580 F.2d 1044 (2d Cir. 1978), *vacated on other grounds*, (2d Cir. Aug. 21, 1978); *Diaz v. Ward*, 437 F.Supp. 678, 691 (S.D.N.Y.1977); *Spirt v. Teachers Institute & Annuity Ass'n*, 416 F.Supp. 1019, 1024 (S.D.N.Y.1976); *Cicero v. Olgiati*, 410 F.Supp. 1080, 1099 n.8 (S.D.N.Y.1976); *Echevarria v. Carey*, 402 F.Supp. 183, 189 (S.D.N.Y.1975); *Rodriguez v. Percell*, 391 F.Supp. 38, 41 n.2 (S.D.N.Y.1975); *Percey v. Brennan*, 384 F.Supp. 800, 811 (S.D.N.Y.1974); *Hurley v. Van Lare*, 365

F.Supp. 186, 189–91 (S.D.N.Y.1973). *But see Feld v. Berger*, 424 F.Supp. 1356, 1363 (S.D.N.Y.1976); *Thomas v. Weinberger*, 384 F.Supp. 540, 543 (S.D.N.Y.1974); *McDonald v. McLucas*, 371 F.Supp. 831, 833–34 (S.D.N.Y.), *aff'd*, 419 U.S. 987, 95 S.Ct. 297, 42 L.Ed.2d 261 (1974); *Tyson v. New York City Housing Authority*, 369 F.Supp. 513 (S.D.N.Y.1973).

**5.** Defendants have conceded, in a stipulation, the existence, during the period of January, 1976 to March, 1979, of approximately 200 present or former students of CUNY, who have discharged or attempted to discharge National Defense Student Loans in bankruptcy. The certified class will consist only of those who

cations giving rise to incompatible standards of conduct for the defendants; should plaintiff prevail, classwide injunctive relief would be appropriate. Accordingly, I conclude that the litigation is properly maintainable as a class action, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(1)(A) and 23(b)(2), on behalf of all persons who, as of the date of entry of this judgment or subsequent thereto, have received a final discharge in bankruptcy of their student loans and who thereafter have been denied access to their college records in the possession of CUNY by reason of their failure to repay their educational loans.

## II.

### SUMMARY JUDGMENT

The facts of this case are not in dispute; there is no genuine issue as to any material fact, and this Court may enter a judgment as a matter of law. Fed.R.Civ.P. 56. I conclude that *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) is dispositive of the matter at hand and accordingly grant summary judgment, enjoining the defendants from denying the members of the certified class access to transcripts. Fed.R.Civ.P. 65.

*Perez* concerned an Arizona statute, which provided that an unsatisfied tort judgment, arising out of an automobile accident, would subject the judgment debtor to suspension of his driver's license, even though the judgment debt had been discharged in bankruptcy. The United States Supreme Court noted the principal purpose of the Arizona act: "the protection of the public using the highways from financial

---

have had their loans actually discharged pursuant to the special statutory scheme dealing with student loans. *See* note 2 and accompanying text *supra.* Therefore, all of the above 200 persons would not be members of the certified class; the class would include, however, additional persons, not included in this approximation of 200 who meet the requirements of the statutory scheme and who have filed petitions in bankruptcy prior to January, 1976 or subsequent to March, 1979; who discharged student loans other than National Defense Student Loans; and who have not come to CUNY's attention. In order to satisfy the numerosity requirement, there need be no specific minimum number of persons; the test is pragmatic. *See, e. g., U. S. ex rel. Sero v. Preiser,* 506 F.2d 1115, 1126–27 (2d Cir. 1974), *Fidelis Corp. v. Litton Indus.,* 293 F.Supp. 164, 170 (S.D.N.Y.1968). In the instant case joinder of all the plaintiffs would be impractical; the class meets the numerosity requirement of Rule 23(a)(1).

The common questions of law required under Rule 23(a)(2) are whether defendants' application of its "hold" policy to deny copies of college records to present or former students, solely because of failure to repay loans that have been discharged in bankruptcy, contravenes the purpose of the Bankruptcy Act and the constitutional requirement of equal protection and due process. The fact of variations in the circumstances of each particular class member, the amount of debt discharged or the reason for requesting a transcript, are inconsequential. The identical policy of the defendant applies in all situations and provides the common question here. *See White v. Mathews,* 559 F.2d 852, 858 (2d Cir. 1977); *Escalera v. N. Y. C. Housing Authority,* 425 F.2d 853, 867 (2d

Cir.), *cert. denied,* 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970); *Norwalk Core v. Norwalk Redevelopment Agency,* 395 F.2d 920, 937 (2d Cir. 1968).

Plaintiff Raymond Lee's claim is typical of that of the members of the class, as required by Rule 23(a)(3). As a student at City College, he received a NDSL in 1971; he commenced payment in 1973; he filed for bankruptcy in 1978 and received a discharge of all his dischargeable debts, including the outstanding balance on his student loan. When Mr. Lee requested that CUNY provide him with a transcript, the Board of Education refused, invoking its "hold" policy. The operative fact here is that plaintiff received a discharge in bankruptcy of his student loan; the circumstances under which that discharge was entered, i. e., which statute governing the dischargeability of student loans was in effect and which conditions hence had to be met, are not relevant. *See* text accompanying note 2 *supra.* He, along with other members of his class, bases his claim on the same legal issue: the unconstitutionality of this policy. *See Bacon v. Toia,* 437 F.Supp. 1371, 1381 (S.D.N.Y.1977), *aff'd,* 580 F.2d 1044 (2d Cir. 1978), *vacated on other grounds,* (2d Cir. Aug. 21, 1978).

The substantial identity of the plaintiff's claim with that of the other members of the class assures that the plaintiff will substantially represent the interest of the class. *Bacon v. Toia, supra* at 1381. Further, the legal services organization representing the plaintiff undoubtedly has sufficient experience and resources to defend plaintiff's interests capably and adequately. The final prerequisite, Rule 23(a)(4), thus is also satisfied.

hardship which may result from the use of automobiles by financially irresponsible persons." 402 U.S. at 644, 91 S.Ct. at 1708 (citing *Schecter v. Killingsworth*, 93 Ariz. 273, 280, 380 P.2d 136, 140 (1963)). It noted a primary purpose of the Bankruptcy Act: "to give debtors 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" *Id.*, 402 U.S. at 648, 91 S.Ct. at 1710–1711 (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)). It then determined that the Arizona statute stood " 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,'" *id.*, 402 U.S. at 649, 656, 91 S.Ct. at 1711 (citing *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)), thus violating the Supremacy Clause of the Constitution.[6] Overruling its previous decisions in *Kesler v. Department of Public Safety*, 369 U.S. 153, 82 S.Ct. 807, 7 L.Ed.2d 641 (1962), and *Reitz v. Mealey*, 314 U.S. 33, 62 S.Ct. 24, 86 L.Ed. 21 (1941), the Court stated that even if a state law had some purpose other than to frustrate federal law, it would still be unconstitutional, if it had the effect of frustrating federal law. *Id.*, 402 U.S. at 654, 91 S.Ct. 1704. The Court found that the Arizona statute had both the effect and the purpose of frustrating federal bankruptcy law. *Id.* The new Bankruptcy Act codifies the result in *Perez.* 11 U.S.C.A. § 525 (1979 Supp.).

▇ The practice of the defendants here[7] of denying access to transcripts to persons who are delinquent in their payments of student loans that had been discharged in bankruptcy similarly runs afoul of the Bankruptcy Act. Both the purpose and the effect of the practice is to bring about the collection of debts notwithstanding their discharge in bankruptcy; this practice flies in the face of the Bankruptcy Law's explicit proviso that "[a] discharge in bankruptcy shall release a bankrupt from all of his provable debts," 11 U.S.C. § 35(a) (1976) (current version in 11 U.S.C.A. § 1328 (Supp.1979)) and its overall aim to " 'relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes.'" *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934) (citing *Williams v. United States Fidelity & Guaranty Co.*, 236 U.S. 549, 554–55, 35 S.Ct. 289, 59 L.Ed. 713 (1915)). In *Perez*, the Court held that suspension of one's driver's license is "a powerful weapon with which to force bankrupts to pay their debts despite their discharge,"

**6.** United States Constitution, Art. VI, Clause 2 states:

"This Constitution and the Laws of the United States which shall be made in pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, any thing in the Constitution or Laws of any State to the Contrary notwithstanding."

**7.** *Perez* involved a state statute. The case at bar involves an administrative policy of a municipal, public university. It is clear, however, that the reference in the Supremacy Clause to the "Laws of any State" is not confined to state statutes; the phrase is construed broadly, in order to guarantee the supremacy of federal law. In *Standard Scale Co. v. Farrell*, 249 U.S. 571, 576, 39 S.Ct. 380, 382, 63 L.Ed. 780 (1919), the Court said by Justice Brandeis:

"For the protection of the Federal Constitution applies, whatever the form in which the legislative power of the State is exerted; that is, whether it be by a constitution, an act of the legislature, or an act of any subordinate instrumentality of the State exercising delegated legislative authority, like an ordinance of a municipality or an order of a commission."

The identical policy of a state university, in refusing to release transcripts of students whose loans had been discharged in bankruptcy, was held to implicate the Supremacy Clause in *Handsome v. Rutgers University, The State University of New Jersey*, 445 F.Supp. 1362 (D.N.J.1978). While the City of New York is a municipality, and not a state, the distinction is without constitutional significance; municipalities must yield to the Supremacy Clause. *Rutledge v. City of Shreveport*, 387 F.Supp. 1277 (W.D.La.1975), *appeal dismissed*, No. 75–1775 (5th Cir. September 14, 1976). The present defendants do not contend that their actions *could* not implicate the Supremacy Clause; nor, in the light of this authority, could they do so.

402 U.S. at 654, 91 S.Ct. at 1713, reasoning that the economic consequences are severe. *Id.* at 643, 91 S.Ct. 1704. Similarly, the practice in the instant case is a powerful incentive to payment of an extinguished debt because the economic consequences of deprivation of a transcript are severe. The named petitioner, if denied access to his transcript, will have to repeat 32 credits of work already completed in order to qualify for the B.A. degree in another institute of higher learning. A teacher, who has submitted an affidavit which is appended to plaintiff's reply memorandum, is in imminent danger of losing her job if she does not obtain a copy of her transcript; in order to receive certification from the graduate school that she is attending, which certification she needs to retain her job, she must provide the graduate school with a record of her undergraduate coursework. These two situations exemplify the vicious cycle that is perpetuated by defendants' practice and which the Bankruptcy Act is designed to terminate: because of inability to pay one's debts, one is prevented from obtaining a copy of one's transcript, which leads to the inability to provide proof of previous education, which puts obstacles in the way of gaining further education and employment, which leads to an inability to keep current with one's debts.

The identical practice by a state university of denying a former student access to a transcript because she was delinquent in payment of installments of a National Defense Student Loan despite the discharge of this debt in bankruptcy was declared unconstitutional in *Handsome v. Rutgers University, supra* n.7. *See also Rutledge v. City of Shreveport, supra* n.7; *Matter of Loftin,* 327 So.2d 543 (La.App.1976) (invalidating a rule suspending municipal employees who invoked the bankruptcy law); *Grimes v. Hoschler,* 12 Cal.3d 305, 115 Cal.Rptr. 625, 525 P.2d 65 (1974) (invalidating state statute suspending licenses of contractors who have been adjudicated bankrupts).

*Girardier v. Webster,* 563 F.2d 1267 (8th Cir. 1977) is not to the contrary. In *Girardier,* the Eighth Circuit held that a *private* college may withhold transcripts to former students whose student loans had been discharged in bankruptcy. The court intimated that the result might have been otherwise if the institution had been public. *Id.* at 1277 (concurring opinion, Bright, J.). *See Handsome v. Rutgers, supra. See also McLellan v. Mississippi Power & Light Co.,* 545 F.2d 919, 929–30 (5th Cir. 1977) (*en banc*) (upholding discharge from private employment on the sole basis of the employee's filing a bankruptcy petition).

■ The plaintiff also alleges a denial of equal protection as guaranteed by the Fourteenth Amendment. Under *San Antonio School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), education and wealth are not suspect classifications and thus are not subject to strict scrutiny; rather the court must examine these classifications and determine if they are reasonably related to a legitimate state interest. *See Reed v. Reed,* 404 U.S. 71, 76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). The underlying goal of the practice of denying transcripts to adjudicated bankrupts is the collection of debts that have been discharged; under *Perez,* such a state interest is *not* legitimate. Therefore, with respect to adjudicated bankrupts who have had their student loans discharged, *i. e.,* the members of the certified class in the instant case, a deprivation of equal protection is made out. The Court declines to determine if persons who had not had their student loans discharged in bankruptcy have been denied equal protection, since such persons, by definition, are not members of the certified class in the instant case.

The plaintiffs also claim that CUNY's practice works a violation of the Due Process Clause of the Fourteenth Amendment. The thrust of the argument is that an individual has a property right in his transcript and that there can be no prejudgment deprivation of that property. *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). The court in *Handsome v. Rutgers,* 445 F.Supp. at 1366 n.6, has

taken the view that a property right in a transcript exists, while recently another court has refused to recognize such a property interest. *Romanelli v. Boyer*, (U.S.D.C.Conn., decided September 9, 1979). Because it is not necessary to the resolution of the case—only those whose loans have been discharged in bankruptcy, as of the date of entry of this order and subsequent thereto, are members of the certified class and they prevail on their supremacy and equal protection arguments—the Court declines to rule on the due process claim.

This Court is not unmindful of the abuse of the discharge of student loans. Some individuals, after financing their education by taking out student loans, upon graduation have filed petitions under the Bankruptcy Act, without any attempt to repay the educational loan and without the presence of any extenuating circumstances, such as illness. Report of the Commissioner of the Bankruptcy Laws of the United States, Part 2, 176–77 (1973). *See State v. Wilkes*, 41 N.Y.2d 655, 394 N.Y.S.2d 849, 363 N.E.2d 555 (1977) (finding a student loan not to be provable, and hence not dischargeable under the old Bankruptcy Act).

Congress, however, has enacted specific legislation to correct this abuse, *see* note 2 and accompanying text *supra*, and the result in this case meshes with the congressional approach. Congress has generally excepted student loans from the discharge given under the auspices of the Bankruptcy Act. Since persons who have not received discharges of their student loans are not members of the certified class in this case, the result herein does nothing to disturb the general exception from the discharge provisions which Congress has conferred upon certain types of student loans. Congress has also provided for some specific excep-

tions to the general exception: discharges are to be granted when the debts are outstanding for more than five years or when excepting the debt from the discharge would cause undue hardship. Congress has also determined that its solution to the problem of the abuse of student loans should have no retroactive effect, and that persons should be adequately forewarned of the special status of student loans under the Bankruptcy Act. Education Amendments of 1976, § 439A, 20 U.S.C. § 1087-3 (1976) (repealed Pub.L. 95–598, Title III, § 317, Nov. 6, 1978, 92 Stat. 2678) (current version in 11 U.S.C.A. § 523(a)(8) (Supp.1979) (effective October 1, 1979)). With respect to those situations in which Congress has determined that student loans should be discharged, in which category the members of the certified class in the instant case fall, this Court is bound to carry out the congressional intent—to afford debtors with dischargeable debts a "fresh start."

Under *Perez*, and the new Bankruptcy Act, a state practice, such as the practice involved in the instant case, which has either or both the purpose or effect of frustrating this fresh start goal, violates the Supremacy Clause of the United States Constitution.

Accordingly, the plaintiff's motion for class certification and summary judgment is granted. The parties are directed to settle an order of permanent injunction in accordance with this opinion on five days' notice.

It is So Ordered.