Jennie B. FORS, Guardian of Lieutenant Colonel Gary H. Fors, United States Marine Corps, Plaintiff-Appellant,

v.

Honorable John LEHMAN, Jr., Secretary of the Navy: Major Gary Allord, USMC; and General Paul X. Kelley, USMC, Commandant of the Marine Corps, Defendant-Appellee.

No. 83–4082.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 8, 1984.

Decided Aug. 28, 1984.

Carl E. McAfee, Cline, McAfee, & Adkins, Norton, Va., for plaintiff-appellant.

Anastasia Dritshulas, Asst. U.S. Atty., Seattle, Wash., for defendant-appellee.

Before PECK *, WRIGHT, and FARRIS, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

The non-dependent mother of Marine Lt. Col. Gary Fors challenges the Navy Secretary's reclassification of her son from missing in action to killed in action. We affirm the district court's dismissal for lack of standing.

FACTS

In December 1967, a plane piloted by Gary Fors, then a Marine Corps captain, was shot down in Laos. Fors and his radar officer were seen ejecting from the aircraft. A recovery team found the radar officer but no sign of Fors. The Navy designated Fors as missing under the Missing Persons Act (MPA), 37 U.S.C. §§ 551–558.

Throughout the period of his missing in action (MIA) status, Fors received military pay and allowances. As he had no dependents, these sums were deposited in an interest bearing account under the Uniformed Services Savings Deposit Program (USSDP), 10 U.S.C. § 1035. Fors was promoted to the rank of lieutenant colonel by July 1, 1980.

In September 1978, his parents, Henry and Jennie Fors, received notice that the Marines' Missing and Captured Review Board (MCRB) would review their son's MIA status to determine whether it should be changed to killed in action (KIA). The parents were allowed to attend a hearing, with or without private counsel, to review all evidence to be considered by the MCRB, and to present additional evidence. A hearing was held in 1979 at Marine headquarters.

Marine Major Allord presided, advised by a Marine attorney. The Fors and their counsel made requests concerning a Defense Department photograph of a Marine POW. They wished to have access to the photo, to have their own photo analysis expert determine whether it showed their son, and they wished to find the returned Air Force POW who asserted that the photo was of himself. Major Allord said that the Defense Department's analysis of the photo would suffice and that he would submit his recommendation to the MCRB based on information in the record.

He recommended to the MCRB that Colonel Fors' status be changed to KIA, and the Board concurred. In 1980, the Secretary of the Navy adopted the MCRB's recommendation and officially changed Colonel Fors' status to KIA. The Fors appealed to the Board for Correction of Naval Records (BCNR), claiming insufficient evidence of their son's death. The appeal was denied.

Henry Fors initiated this lawsuit, and since his death Jennie has maintained it, both as guardians of their son. They complained that they were not notified of details of the MCRB's status review. They sought to have the status restored to MIA

---

* Senior Circuit Judge John W. Peck, United States Court of Appeals for the Sixth Circuit.

and to enjoin the Secretary of the Navy from adjusting the status without court order. They asserted that Major Allord was biased. They requested a new hearing, access to the MCRB's recommendation, and the right to submit new evidence.

The district judge dismissed the complaint for lack of standing because Mrs. Fors was not a dependent. On appeal, she raises only the question of standing, claiming a right to sue as Colonel Fors' "limited guardian" under Washington law.

## STANDARD OF REVIEW

The Secretary asserts that the standard of review depends on whether the lower court dismissed the case under Federal Rule of Civil Procedure 12(b)(6) (failure to state a claim upon which relief can be granted) or under Rule 56 (summary judgment).

Reviewing dismissal under Rule 12(b)(6), we "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). Reviewing summary judgment under Rule 56, we must view the evidence in the light most favorable to the non-moving party, determine whether there are genuine issues of material fact and, if not, determine whether the movant may prevail as a matter of law. *Clipper Express v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1250 (9th Cir.1982), *cert. denied*, 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983).

In this case, the Fors are both the non-moving party and the complaining party. Whether dismissal was under Rule 12(b)(6) or Rule 56, we must consider the evidence in the light most favorable to the appellants and review the legal issue de novo. *See Allen v. Wright*, — U.S. —, —, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984) ("the standing inquiry requires careful judicial examination of a complaint's allegations").

## DISCUSSION

Standing involves both a constitutional and a prudential component. *Allen v. Wright*, — U.S. at —, 104 S.Ct. at 3325; *McMichael v. County of Napa*, 709 F.2d 1268, 1269 (9th Cir.1983).

■ To satisfy the constitutional requirement, a plaintiff must allege (1) a distinct and palpable personal injury that is (2) fairly traceable to the defendant's challenged action and (3) likely to be redressed by the requested relief. *Allen v. Wright*, — U.S. at —, 104 S.Ct. at 3325; *McMichael*, 709 F.2d at 1270.

■ Prudential concerns, "judicially self-imposed limits on the exercise of federal jurisdiction," *Allen v. Wright*, — U.S. at —, 104 S.Ct. at 3324, include "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Id.*; *see McMichael*, 709 F.2d at 1270.

Failure to establish any of these elements precludes standing. *See, e.g., Allen v. Wright*, — U.S. at —, 104 S.Ct. at 3325 (government financial aid to discriminatory private school is not judicially cognizable injury; alleged impaired ability to have public schools desegregated is not fairly traceable to IRS conduct); *McMichael*, 709 F.2d at 1272 (alleged denial of right to cast undiluted vote not within zone of interests of equal protection clause); *Warth v. Seldin*, 422 U.S. at 509, 95 S.Ct. at 2210 (taxpayers could not assert rights of low income third parties excluded by challenged zoning law).

The initial difficulty is determining what injury Mrs. Fors alleges. It could be the abstract injury to Colonel Fors in being denied his due process rights or, as Mrs. Fors alleged at oral argument, the injury to Colonel Fors in having difficulty recovering his estate should he return after its distribution. Alternatively, the injury could be

mental anguish or monetary loss to the parents.

## I. *Standing to Assert Gary's Rights*

▋ Mrs. Fors alleges injury to her son in that the change of status involved a denial of due process that is injury both in itself and in the difficulty Colonel Fors would have recovering his estate should he return. As "limited guardian," she asserts her son's rights and interests in due process, not her own.

At the hearing before the district judge, the Fors claimed that they had been denied the procedural due process outlined in *McDonald v. McLucas*, 371 F.Supp. 831 (S.D. N.Y.), *aff'd*, 419 U.S. 987, 95 S.Ct. 297, 42 L.Ed.2d 261 (1974). Apparently, they believed that the *McDonald v. McLucas* procedures satisfy due process under the MPA but that the hearing before Major Allord did not satisfy *McDonald v. McLucas*.

In that case, a special three-judge panel held that due process required that next-of-kin of servicemen missing in action be given notice of the status review, a reasonable opportunity to attend the review with a lawyer, access to the information upon which the reviewing board would act, and the opportunity to present information which they considered relevant. 371 F.Supp. at 836.

The government responded that the hearing before Major Allord was the established and accepted method of satisfying these due process requirements. It pointed out also that non-dependent parents are not next-of-kin under *McDonald v. McLucas* and are afforded the *McDonald* procedures not as a right but as a courtesy.

In *Crone v. United States*, 538 F.2d 875, 210 Ct.Cl. 499 (1976), the Court of Claims denied standing to nondependent parents of servicemen whose status was changed from MIA to KIA. Those plaintiffs sued not to protect their own interests but to protect those of the absent MIAs. Their sons were the real parties in interest, they said, and they sought to represent them as "next friends." 538 F.2d at 881. They argued that "next friends", as with judicial-ly appointed guardians, often represent the interests of incompetents.

The Court of Claims held that missing persons are not incompetent. In denying standing, it relied on:

> the principle that, in every suit, there must be a real party in interest to whose present, personal benefit a money judgment may run. Missing persons do not and cannot meet this requirement. This is so because any judgment running to the benefit of a missing person is, of necessity, speculative, hypothetical, and contingent upon such person's possible survival and reappearance.

*Id.* at 882. This analysis reflects the prudential prohibition on a litigant's raising the rights of another. *See, e.g., Warth v. Seldin*, 422 U.S. at 499, 95 S.Ct. at 2205. The Court of Claims pointed out that the servicemen themselves, if they return, may assert their rights to pay and allowances under the MPA, 37 U.S.C. § 552. 538 F.2d at 882.

In addition, the court found no indication that Congress intended that anyone other than the MIAs or their dependents could assert rights under the MPA. *Id. See* 37 U.S.C. § 555(c). This analysis reflects the prudential requirement that a plaintiff's complaint fall within the zone of interests of the statute invoked. *See, e.g., McMichael*, 709 F.2d at 1270.

On these points, there is little to distinguish *Crone* from Fors' case. Despite any designation as guardian under Washington law, Mrs. Fors has no more personal interest than the purported plaintiffs in *Crone*. *See Crone*, 538 F.2d at 881 n. 4. Similarly, she falls outside the zone of interests of the MPA.

Without discussing standing, the Second Circuit allowed 21 missing servicemen, by their relatives as next friends and as guardians, to challenge determinations of death under the MPA. *Hopper v. Carter*, 572 F.2d 87 (2d Cir.1978). *See Crone*, 538 F.2d at 881 n. 4. The case does not show whether the relatives were dependents. Some wives may have been dependents but others, parents and a brother, probably were not. The court may have assumed

dependence because it referred to the regulations in question as providing notification "to next-of-kin *receiving financial benefits*." *Hopper*, 572 F.2d at 88 (emphasis added).

In any event, the court denied the relief requested, a preliminary injunction against proceeding to make determinations of death. It noted that the government treats generously servicemen who return after being declared dead and makes every effort to find out what actually happened to MIAs "before reaching any determination adverse to their interests or to those of their next-of-kin." *Id.* at 88, 89.

We are persuaded that *Crone* is correct and that Mrs. Fors lacks standing as her son's guardian.

II. *Standing of Non-Dependent Parents*

Since Henry and Jennie Fors have never asserted monetary injury to themselves, we need not decide whether it can serve as the basis for their standing.

In an October 1980 memorandum in support of a motion, Mr. Fors alleged that he and Mrs. Fors suffered "mental anguish by the thought that their son is presumed dead without any demonstrable and credible actions or investigations" by the government and that the presumption of death lessens the government's incentive to continue investigating. This assertion does not appear in the appellate brief.

Whether non-dependent parents' mental anguish at the reclassification of their son as KIA and resulting cessation of government efforts to find him constitutes a judicially cognizable injury remains an open question. We need not decide it, however, because of other standing considerations.

■ Even if mental anguish is injury, it is not within the zone of interests of the MPA. As noted in *Crone*, the MPA's primary purpose was to alleviate financial hardship suffered by dependents of MIAs. 538 F.2d at 882. It does not concern the mental anguish of non-dependents.

■ Nor is the alleged injury within the zone of interests of the due process clause. That requires only that the government follow the status review procedures established under the MPA, as set out in *McDonald v. McLucas*, 371 F.Supp. at 836; 37 U.S.C. §§ 555, 556. Since non-dependent parents are outside the zone of interests of the MPA, they are also outside the zone of interests of the due process clause.

■ Mrs. Fors says that the government is estopped to deny her standing because it considered her husband next-of-kin and allowed them some rights under the MPA, such as initial notice of status review. These opportunities were not rights but privileges. As noted above, the MPA is intended to benefit dependents of MIAs. The government's extension to non-dependents of certain procedures does not change the purpose of the MPA or widen its zone of interests.

CONCLUSION

Mrs. Fors has no standing, either as guardian protecting her son's interests, or as a non-dependent parent claiming mental anguish. She charges that, if she has no standing, then no one may sue on her son's behalf. But as the *Crone* and *Hopper* courts pointed out, he may assert his own rights if he returns alive. *Crone*, 538 F.2d at 882; *Hopper*, 572 F.2d at 88.

AFFIRMED.