765 F.2d 937
 15 Envtl. L. Rep. 20,697
 ANIMAL LOVERS VOLUNTEER ASSOCIATION, INC., (A.L.V.A.),
Harold Baerg, Plaintiffs-Appellants,
v.
Caspar WEINBERGER, in his official capacity as Secretary of
Defense, John F. Lehman, in his official capacity
as Secretary of the United States Navy,
Defendants-Appellees.
 No. 84-6163.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 4, 1985.
Decided July 15, 1985.
 
 Alexander T. Henson, Carmel Valley, Cal., for plaintiffs-appellants.
 Joseph Butler, Los Angeles, Cal., U.S. Dept. of Justice, David C. Shilton, Washington, D.C., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before GOODWIN, SNEED and SKOPIL, Circuit Judges.
 PER CURIAM.
 
 
 1
 Animal Lovers Volunteer Association (ALVA) brought this action to enjoin the Navy from shooting feral goats on San Clemente Island. The district court granted summary judgment for the Navy. ALVA appeals and we affirm.
 
 
 2
 San Clemente Island, California, is a military enclave under the jurisdiction of the Navy. Although a limited number of nonmilitary personnel use San Clemente for research purposes, there is no public access to the island. In 1977, the Fish and Wildlife Service of the Department of the Interior determined, in accordance with the Endangered Species Act, 16 U.S.C. Sec. 1531 et seq., that removal of goats running wild on San Clemente was necessary to protect endangered or threatened animals and plants in a critical habitat covering approximately one third of the island.
 
 
 3
 The Navy proposed to remove the goats through a program of "aerial eradication", which involved using Navy marksmen to shoot the goats from helicopters. Between 1979 and 1983, an organization called Fund for Animals brought two actions to enjoin the Navy from pursuing this method of goat removal. Both actions resulted in agreements between Fund for Animals and the Navy that Fund for Animals could trap and remove live goats from the island. Each time, however, after an only partially successful effort at trapping, the Navy again announced it would begin shooting the goats. After the second such episode, Fund for Animals withdrew from the cause. ALVA took over, headed by Harold Baerg, who had been a co-plaintiff with Fund for Animals in the earlier actions.
 
 
 4
 The theory underlying ALVA's request for injunctive relief was that the environmental impact statement prepared by the Navy for the removal program was so inadequate as to violate the National Environmental Policy Act (NEPA), 42 U.S.C. Secs. 4321, 4332. We need not reach the merits of ALVA's contentions under NEPA because ALVA lacks standing to maintain this lawsuit.
 
 
 5
 A party has standing to protest an action taken by someone else if he or she can show two things--"injury in fact" arising from the action and injury "arguably within the zone of interests to be protected" by a violated statute. Sierra Club v. Morton, 405 U.S. 727, 733, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636 (1972), citing Data Processing Service v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) and Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). ALVA has not demonstrated what injury in fact its members will suffer if the San Clemente Island goats are shot by the Navy.
 
 
 6
 If goats were an endangered species, or if ALVA sought to protect the plants endangered by the goats, ALVA's position would be different. See Palila v. Hawaii Department of Land & Natural Resources, 471 F.Supp. 985, 991 (D.Hawaii 1979), aff'd, 639 F.2d 495 (9th Cir.1981). If ALVA showed that the Navy's program would affect its members' aesthetic or ecological surroundings, its position also might be different. See United States v. SCRAP, 412 U.S. 669, 686, 93 S.Ct. 2405, 2415, 37 L.Ed.2d 254 (1973); Sierra Club v. Morton, 405 U.S. at 734, 92 S.Ct. at 1365. See also Trustees for Alaska v. EPA, 749 F.2d 549, 554 (9th Cir.1984). But ALVA has alleged no such cognizable injury to its members. A mere assertion of organizational interest in a problem, unaccompanied by allegations of actual injury to members of the organization, is not enough to establish standing. California v. Watt, 683 F.2d 1253, 1270, (9th Cir.1981), rev'd on other grounds, 464 U.S. 312, 104 S.Ct. 656, 78 L.Ed.2d 496 (1984).
 
 
 7
 A general contention that because of their dedication to preventing inhumane treatment of animals, ALVA members will suffer distress if the goats are shot does not constitute an allegation of individual injury. While we may to some degree share ALVA members' distress over a particular form of capricide, the NEPA zone of interests does not create a cause of action in persons claiming a psychological impact from a particular action, Metropolitan Edison Co. v. People Against Nuclear Energy, 460 U.S. 766, 103 S.Ct. 1556, 1560-63, 75 L.Ed.2d 534 (1983), unless, perhaps, the psychological injury arises "out of the direct sensory impact of a change in the [plaintiffs'] physical environment." Metropolitan, 03 S.Ct. at 1564 (Justice Brennan, concurring). San Clemente's goat control produces no "direct sensory impact" on ALVA's own environment or on any environment to which ALVA members have access.
 
 
 8
 Moreover, ALVA has not differentiated its concern from the generalized abhorrence other members of the public may feel at the prospect of cruelty to animals. To have standing, a party must demonstrate an interest that is distinct from the interest held by the public at large. Sierra Club v. Morton, 405 U.S. at 736-741, 92 S.Ct. at 1367-1369. ALVA lacks the longevity and indicia of commitment to preventing inhumane behavior which gave standing to Fund for Animals, and which might provide standing to other better known organizations. While an organization's standing is not simply a function of its age or fame, those factors become highly relevant when the organization, like ALVA, has no history which antedates the legal action it seeks to bring, and can point to no activities which demonstrate its interest, other than pursuing a legal action. In short, ALVA has not demonstrated that it has an organizational stake, or any of its members a personal stake, in the outcome of this litigation. See EMI Ltd. v. Bennett, 738 F.2d 994, 996 (9th Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 567, 83 L.Ed.2d 508 (1984) (not in the environmental law context); Baker v. United States, 722 F.2d 517, 518 (9th Cir.1983) (same).
 
 
 9
 ALVA has expressed concern that if it is denied standing the effect will be to impose an actual-use test in a situation in which actual use is impossible, and to make the Navy immune from citizens' protests against illegal Navy activity on restricted Navy property. In this respect, ALVA has confused its alleged standing with its right of action. A right of action may exist where a particular party does not have standing. See California Cartage Co. v. United States, 721 F.2d 1199, 1203 (9th Cir.1983) cert. denied, --- U.S. ----, 105 S.Ct. 110, 83 L.Ed.2d 53 (1984); California v. Watt, 683 F.2d at 1270.
 
 
 10
 We do not hold that nobody may bring an action against the Navy to prevent it from violating NEPA; we hold that ALVA may not do so under these circumstances. The fact that Fund for Animals was allowed to proceed with two earlier lawsuits demonstrates that a right of action may exist to prevent the Navy from engaging in certain practices, if illegal, even on its own property. ALVA cannot interfere, however, with the government's method for ridding its own property of its own goats, unless the method chosen causes ALVA members an injury which is " 'distinct and palpable,' ... and not 'abstract'...." Allen v. Wright, --- U.S. ----, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984) (citations omitted); see Fors v. Lehman, 741 F.2d 1130, 1132 (9th Cir.1984). ALVA's injury is abstract at best, and insufficient to remove ALVA from the category of concerned bystander.
 
 
 11
 Affirmed.