46 F.3d 93
 310 U.S.App.D.C. 228, 25 Envtl. L. Rep. 20,612
 The HUMANE SOCIETY OF THE UNITED STATES, Appellant,
v.
Bruce BABBITT, Secretary of the United States Department of
Interior, Irvin Feld and Kenneth Feld Productions, Inc.,
d/b/a Ringling Bros. and Barnum & Bailey Circus, and
Hawthorn Corporation, Appellees.
 No. 93-5339.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Dec. 15, 1994.
Decided Feb. 14, 1995.
 
 Appeal from the United States District Court for the District of Columbia (92cv0952).
 Irwin Goldbloom argued the cause for appellant. With him on the briefs were Lee D. Hwang and Robert B. Wasserman. Philip Lance Gordon entered an appearance for appellant.
 Martin W. Matzen, Atty., U.S. Dept. of Justice, argued the cause for appellee Babbitt. With him on the brief were Lois J. Schiffer, Asst. Atty. Gen., and Robert L. Klarquist, Atty., U.S. Dept. of Justice.
 Sally P. Paxton argued the cause for appellee Ringling Bros. and Barnum & Bailey Circus. With her on the brief was John M. Simpson.
 Benjamin W. Boley argued the cause for appellee Hawthorn Corp. With him on the brief were Robert B. Wasserman and David B. Goodhand. Larry T. Garvin entered an appearance for Hawthorn Corp.
 Before: SILBERMAN, WILLIAMS, and ROGERS, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SILBERMAN.
 SILBERMAN, Circuit Judge:
 
 
 1
 The Humane Society of the United States (Society) appeals from the district court's grant of summary judgment in favor of the Secretary of the Interior and Hawthorn Corporation. The Society challenged a certificate issued by the Secretary exempting Hawthorn from Endangered Species Act (ESA) prohibitions on the transport of an Asian elephant interstate and abroad. We conclude that the Society lacked standing and therefore vacate the district court's judgment and remand with directions to dismiss the case for want of jurisdiction.
 
 I.
 
 2
 Lota, a female Asian elephant, was born in the wild in 1950 and brought to the Milwaukee Zoo in 1954, where she remained for 36 years. Toward the end of her stay at the zoo, Lota began to exhibit aggressive behavior toward the zoo's other Asian elephants, in particular one older elephant whose health and safety were jeopardized by Lota's actions. After numerous efforts to modify Lota's behavior failed, the zoo decided in November 1990 to donate her to the Hawthorn Corporation in Illinois, which breeds, trains, and exhibits Asian elephants.
 
 
 3
 Asian elephants are endangered species subject to regulation under both the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES"), 27 U.S.T. 1087, T.I.A.S. 8249, entered into force July 1, 1975, and the Endangered Species Act ("ESA"), 16 U.S.C. Secs. 1531-1544 (1988). In July 1991, the Fish and Wildlife Service (FWS) issued a CITES certificate designating Lota a "pre-Convention animal" exempt from CITES' import and export restrictions. The certificate was amended in August 1991 to further designate Lota as a "pre-Act animal" exempt from the ESA's restrictions on the import and export of endangered species or their shipment in interstate or foreign commerce in the course of a commercial activity, id. Sec. 1538(a)(1)(A), (E). It is the amendment to the certificate designating Lota as exempt from the ESA which the Society challenges here.[1]
 
 
 4
 The propriety of FWS' exemption of Lota from the ESA prohibitions on interstate and international transportation of endangered species turns on the definition of "commercial activity" in the statute. The term appears in two relevant sections: first, the ESA's "captive-held" exemption, 16 U.S.C. Sec. 1538(b)(1), provides that
 
 
 5
 The provisions of subsections (a)(1)(A) [prohibiting import and export of an endangered species] ... shall not apply to any fish or wildlife which was held in captivity or in a controlled environment on (A) December 28, 1973 ... Provided, that such holding and any subsequent holding or use of the fish or wildlife was not in the course of a commercial activity.
 
 
 6
 Second, Sec. 1538(a)(1)(E) prohibits, inter alia, the transportation or shipment of an endangered species in interstate or foreign commerce "in the course of a commercial activity." The ESA defines the term "commercial activity" to include "all activities of industry and trade, including, but not limited to, the buying or selling of commodities ..." 16 U.S.C. Sec. 1532(2). In 1975, FWS promulgated regulations which interpret "industry and trade" to mean only "the actual or intended transfer of wildlife or plants from one person to another person in the pursuit of gain or profit." 50 C.F.R. Sec. 17.3 (1993) (emphasis added).
 
 
 7
 In the 19 years since the regulation took effect, FWS has interpreted "commercial activity" to exclude the transportation of an endangered species across state or national borders where there is no change in ownership or control of the animal. Under FWS' reading of the statute, Hawthorn's exhibition of Lota in the U.S. and abroad satisfies the "captive-held" exemption, Sec. 1538(b)(1),[2] and does not violate Sec. 1538(a)(1)(E), because Hawthorn's use of Lota does not constitute "commercial activity." The Society sued in district court seeking an injunction to suspend operation of Hawthorn's certificate for Lota, and a determination that FWS' interpretation of the ESA exempting Lota was unlawful. The court denied the Society's request for a preliminary injunction, and subsequently granted summary judgment for the Secretary and Hawthorn. After determining that the statutory language is ambiguous, the court held that FWS' interpretation of "commercial activity" is not unreasonable, accords with the legislative history of the ESA, and has been impliedly ratified by Congress through subsequent amendments to the statute which left the definition of "commercial activity" unchanged.[3]
 
 II.
 
 8
 A party invoking federal jurisdiction must satisfy the "irreducible constitutional minimum" of standing: injury-in-fact, causally linked to the alleged unlawful conduct, which is likely to be redressed by a favorable decision of the court. Lujan v. Defenders of Wildlife, 504 U.S. 555, ----, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (Defenders of Wildlife); see Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324-25, 82 L.Ed.2d 556 (1984); Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 474-75, 102 S.Ct. 752, 759-60, 70 L.Ed.2d 700 (1982). We must examine standing on appeal even where, as here, the court below did not address the question (although Hawthorn raised it),[4] for " 'every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review....' " Animal Legal Defense Fund, Inc. v. Espy, 23 F.3d 496, 499 (D.C.Cir.1994) (citing FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231, 110 S.Ct. 596, 607-08, 107 L.Ed.2d 603 (1990)).
 
 
 9
 Injury for standing purposes implies the "invasion of a legally-protected interest which is ... concrete and particularized," and "actual or imminent, not 'conjectural' or 'hypothetical.' " Defenders of Wildlife, --- U.S. at ----, 112 S.Ct. at 2136 (citations omitted). To establish injury, the Society submitted affidavits from a Society representative, Michael Winikoff, (to which were attached a number of letters from Society members (the "Winikoff letters")),[5] and a Milwaukee resident, Kay Mannes. These documents and the Society's pleadings are somewhat ambiguous regarding the precise nature of the injury claimed. We can discern two potential theories of harm in the affidavits, and consider each in turn: first, Ms. Mannes' statement that she is harmed by Lota's absence from the zoo because she has lost the opportunity to study Asian elephants generally; and second, the claim that Society members are harmed by their inability to observe Lota at the zoo.
 
 A. Injury-in-Fact
 
 10
 In support of first theory of injury, Ms. Mannes, a resident of Milwaukee, Wisconsin, claims that she had visited the Milwaukee Zoo several times between 1968 and 1992, viewed Lota, and found the experience "both educational and aesthetically satisfying." "Through viewing and studying Lota," Ms. Mannes asserted, "I have learned more about the Asian elephant and have gained an appreciation of endangered animals ... I have been harmed by the absence of Lota at the [zoo] because I have lost the opportunity to learn about an endangered animal, the Asian elephant." (emphasis added).
 
 
 11
 It is true that aesthetic interests such as the observation and study of endangered animals may in some circumstances state cognizable grounds to support Article III standing. See Sierra Club v. Morton, 405 U.S. 727, 734, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636 (1972); Defenders of Wildlife, --- U.S. at ----, 112 S.Ct. at 2137. But in these cases, the plaintiffs asserted injury because the challenged conduct threatened to diminish or deplete the overall supply of endangered animals available for observation and study. See Defenders of Wildlife, --- U.S. at ----, 112 S.Ct. at 2137 (plaintiffs claim injury because "the lack of consultation with respect to certain funded activities abroad 'increas[es] the rate of extinction of endangered and threatened species.' "); Sierra Club, 405 U.S. at 734, 92 S.Ct. at 1366 (plaintiffs claimed that the proposed development "would destroy or otherwise adversely affect the scenery, natural and historic objects and wildlife of the park...."); Japan Whaling Ass'n v. American Cetacean Soc., 478 U.S. 221, 231 n. 4, 106 S.Ct. 2860, 2867 n. 4, 92 L.Ed.2d 166 (1986) (injury-in-fact where whale watchers' interests "will be adversely affected by continued whale harvesting....").
 
 
 12
 For Ms. Mannes' Affidavit to show cognizable injury, then, it should set forth facts which, when taken as true, would suggest that Lota's absence from the zoo threatens Ms. Mannes' ability to observe and study Asian elephants generally. Certainly Ms. Mannes does not claim that Lota was the only Asian elephant at the zoo. The Society's own exhibits, filed with their motion for a preliminary injunction, show that at the time of the transfer, "Lota was one of four Asian elephants the Zoo houses." Ms. Mannes does not actually explain how Lota's departure--which reduced the number of Asian elephants from four to three--threatened her opportunity to observe Asian elephants. (Indeed, it was Lota's aggressive behavior toward another Asian elephant, Tamara, over several years which prompted zoo officials to donate her to Hawthorn.) While we can imagine a situation where a frequent zoo visitor's systematic observation of an animal species might be sufficiently threatened by the removal of some or even one animal from the zoo to make out a cognizable claim for standing purposes, this does not appear to be such a case--or at least it has not been well pleaded.
 
 
 13
 Even if the reduced number of Asian elephants at the Milwaukee Zoo had a impact on Ms. Mannes' observation and study of the species, Ms. Mannes' statement is in any event problematic because it does not assert that Ms. Mannes intends to return to the zoo to observe the elephants. Like the affidavits discussed in Defenders of Wildlife, the Mannes Affidavit omits an allegation that the asserted injury to Ms. Mannes is "imminent." Defenders of Wildlife, --- U.S. at ----, 112 S.Ct. at 2138 ("without any description of concrete plans, or indeed even any specification of when the [day of return] will be," the affidavits "do not support a finding of the 'actual or imminent' injury that our cases require.") (emphasis in original).
 
 
 14
 For these reasons we think the Society cannot claim injury based on Ms. Mannes' lost opportunity to study Asian elephants at the zoo. There remains the more novel claim that Society members are injured because they can no longer visit Lota--one particular Asian elephant--at the zoo. The affidavits suggest that members of the Society have been emotionally injured; they have "suffered severe distress" as a result of Lota's move from the zoo to Hawthorn, including "sleeplessness, depression, and anger," Winikoff Affidavit at 2. But general emotional "harm," no matter how deeply felt, cannot suffice for injury-in-fact for standing purposes. See, e.g., Valley Forge, 454 U.S. at 485, 102 S.Ct. at 765 ("the psychological consequence presumably produced by observation of conduct with which one disagrees" nonetheless "is not an injury sufficient to confer standing under Art. III ..."); Animal Lovers Volunteer Ass'n, Inc. v. Weinberger, 765 F.2d 937, 938-39 (9th Cir.1985) (allegation that members of animal rights group will "suffer distress if ... goats are shot does not constitute an allegation of individual injury.";) cf. Asarco, Inc. v. Kadish, 490 U.S. 605, 616, 109 S.Ct. 2037, 2044-45, 104 L.Ed.2d 696 (1989) (teachers association members' "special interest in the quality of education" alone cannot confer standing); Humane Soc'y of the United States v. Hodel, 840 F.2d 45, 52 (D.C.Cir.1988) (noting agreement with the lower court that "what it terms the 'mere emotional injuries' in this case are noncognizable.").
 
 
 15
 To be sure, no court has yet considered whether an emotional attachment to a particular animal (not owned by a plaintiff) based upon the animal being housed in a particular location could form the predicate of a claim of injury. But the Society's affidavits and letters do not appear to support such a claim even if it were cognizable. It would have to rest--if at all--on the Winikoff Affidavit since, as noted, Ms. Mannes expressed only an interest in observing Asian elephants generally. Winikoff, the legal investigator for the Society, summarized 250 letters and 200 phone calls he received from persons concerned about Lota's condition after she was moved from the zoo; 83 of the letters were attached to the Winikoff Affidavit. None of the 83 letters, however, supports Winikoff's statement that "many" Society members claimed to have visited the zoo elephants before and after Lota's removal and were "distressed" by her absence. Only three of the 83 letters even mention that the writer has ever visited the Milwaukee Zoo.[6] None of these make any reference to viewing Lota there: two of the three suggest that the authors enjoyed observing the elephants, but none asserts any injury because the writer is unable to see Lota again. In light of Defenders of Wildlife 's teaching that "[i]n response to a summary judgment motion ... the plaintiff can no longer rest on ... mere allegations, but must set forth by affidavit or other evidence specific facts" supporting his claim of injury, it is difficult to conclude that Mr. Winikoff's assertions can suffice to show injury-in-fact. See Defenders of Wildlife, --- U.S. at ----, 112 S.Ct. at 2137 (internal quotations omitted) (citing FED.R.CIV.P. 56(e)).
 
 
 16
 The Society's attempt to shift its standing argument in its reply brief to the claim that its members are injured by the lost opportunity to view Lota in a "conservation setting" does not strengthen their case. The term "conservation setting" apparently means a setting "free from commercial exploitation," perhaps including, but not limited to, the Milwaukee Zoo--we cannot tell. In making this argument, the Society primarily relies on a letter from Debra L. and Thomas K. Owens, attached to the Winikoff Affidavit. The Owens reside in Lake Villa, Illinois, near Hawthorn's facilities. The Society asserts that their letter makes it "readily apparent that the Owens had a concrete and legitimate aesthetic interest in viewing Lota in a surrounding where she would not be 'exploited,' " i.e., an unspecified "conservation setting."
 
 
 17
 Contrary to the Society's assertion, however, the Owens do not claim any interest in observing or studying Lota in a "conservation setting" or anywhere else. They never state that they have seen or visited Lota in the past, or that they intend to do so in the future. After expressing their "outrage[ ]" at the alleged mistreatment of Lota during her move from the zoo, the Owens state that they considered informing the local media of Lota's plight, but were "concerned that this could possibly make the situation worse from HSUS's point of view in being able to see [Lota] and monitor her condition." (emphasis added). In its brief, the Society transposes this quotation into the claim that "the Owens were concerned that their ability to 'see [Lota] and monitor her condition' might be further impaired" if they informed the media. No other language in the letter supports the Society's position that the Owens have any particular interest in Lota other than their general concern for her welfare, nor do any of the other Winikoff letters support this position.
 
 
 18
 The Society also relies for this "conservation setting" theory on the Mannes Affidavit. But as we have discussed at length above, Ms. Mannes' recitation can at most be said to express an interest in seeing Lota at the zoo, not anywhere else. Because we find no other support in the record for a claim of injury based on Society members' interest in seeing Lota in a "conservation setting," we will treat that argument for purposes of the case as being identical to the argument that injury arises from Lota's absence from the zoo.[7]
 
 
 19
 The Society's claim of "procedural injury," allegedly arising out of FWS' failure to determine whether Hawthorn meets the statutory criteria for obtaining a "conservation permit" for Lota under 16 U.S.C. Sec. 1539 adds nothing.[8] The Society correctly notes that in Defenders of Wildlife, the Supreme Court suggested that a party might be able to argue "procedural injury" for standing purposes where "plaintiffs [seek] to enforce a procedural requirement the disregard of which could impair a separate concrete interest of theirs," --- U.S. at ----, 112 S.Ct. at 2142, and that such "procedural injuries" have been relied on as a basis for standing in this Circuit. See, e.g., Idaho Pub. Util. Comm'n v. ICC, 35 F.3d 585, 591 (D.C.Cir.1994); Moreau v. FERC, 982 F.2d 556, 566 (D.C.Cir.1993). These cases make clear, however, that a "procedural injury" arises where the claimant asserts a substantive injury from the denial of the statutorily required procedure. Because the Society has not adequately alleged that its members are harmed by not being able to see Lota in a "conservation setting," they cannot claim injury from the denial of a procedure allegedly intended to achieve that result.[9]
 
 
 20
 In sum, it is difficult for us to see how the Society's injury claim may be brought within standing precedent. We need not finally conclude, however, whether the Society makes a valid claim of injury-in-fact from the lost opportunity to observe Lota in the zoo. Although we are doubtful that it has been established here, a person who had made a particular study of Lota the elephant over a period of time might be able to claim injury from her sudden departure from the zoo. See Defenders of Wildlife, U.S. at ----, 112 S.Ct. at 2139 (noting in dicta that "[i]t is clear that the person who observes or works with a particular animal threatened by a federal decision is facing perceptible harm, since the very subject of his interest will no longer exist."). But assuming arguendo that a sufficient injury from Lota's absence from the zoo has been established, we think that any such injury clearly fails to satisfy the "causation" and "redressability" requirements of standing analysis.
 
 B. Causation
 
 21
 In applying the causation test, we have said that "fair traceability turns on the causal nexus between the agency action and the asserted injury...." Freedom Republicans, Inc. v. Federal Election Comm'n, 13 F.3d 412, 418 (D.C.Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 84, 130 L.Ed.2d 36 (1994). In this case, no such nexus exists. The alleged unlawful action here--FWS' determination that Hawthorn may transport Lota interstate and abroad because Hawthorn's use of her does not constitute "commercial activity" under the ESA--is not fairly traceable to Society members' inability to study Lota at the zoo. Lota had already left the zoo, and was held as Hawthorn's property in Illinois, at the time Hawthorn sought permission to transport her. Thus had the challenged action never taken place, i.e., had Hawthorn never sought the permit, but simply kept Lota at its headquarters in Illinois, Society members would still have been unable to see Lota at the zoo. The challenged action cannot therefore be said to have "caused" the injury complained of.
 
 C. Redressability
 
 22
 The redressability prong of Article III standing analysis requires simply that the claimed injury " 'is likely to be redressed by a favorable decision.' " National Wildlife Federation v. Hodel, 839 F.2d 694, 704 (D.C.Cir.1988) (citations omitted). As we have noted repeatedly in the past, the redressability inquiry may often "meld[ ] into that of causation ... in cases where the relief sought is merely the cessation of illegal conduct." Humane Soc'y of the United States v. Hodel, 840 F.2d 45, 51 n. 5 (D.C.Cir.1988) (citation omitted). This is such a case, for just as the challenged agency action was not "fairly traceable" to the claimed injury, we see no possibility that the injury suffered by Society members due to Lota's absence from the zoo could be redressed by a favorable decision here. Even if this court were to invalidate FWS' longstanding interpretation of the ESA, and determine that Hawthorn's interstate and international transportation of Lota constitutes "commercial activity" under the statute, there is no likelihood that this will lead to Lota's return to the Milwaukee Zoo, where Ms. Mannes and others might continue to observe her. Hawthorn would be able to keep Lota in Illinois under any circumstances not otherwise inconsistent with the law. There are no grounds to even speculate that Hawthorn would try to return Lota to the zoo; indeed, there are good reasons to think that the zoo would be unwilling to take her back. After all, it was Lota's interference with the well-being of other elephants at the zoo which prompted the zoo to donate her to Hawthorn in the first place.[10] Cf. Asarco, Inc. v. Kadish, 490 U.S. 605, 615, 109 S.Ct. 2037, 2044, 104 L.Ed.2d 696 (1989) ("Whether the association's claims of ... injury would be redressed by a favorable decision in this case depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume to control or to predict.")
 
 
 23
 * * * * * *
 
 
 24
 For the foregoing reasons, we vacate the judgment of the district court and remand with instructions to dismiss for want of jurisdiction.
 
 
 
 [1]
 The Society does not challenge the certificate's validity under CITES
 
 
 [2]
 The parties agree that Lota satisfies the first requirement of the "captive-held" exemption in 16 U.S.C. Sec. 1538(b)(1) because she was held in a controlled environment prior to 1973
 
 
 [3]
 The district court also granted summary judgment for defendants on the Society's claim that the interstate transfer of Lota from the zoo to Hawthorn in November 1990 violated Sec. 1538(a)(1)(E) of the ESA. The Society has waived any challenge to the district court's disposition of this count by failing to raise it on appeal. See, e.g., Natural Resources Defense Council, Inc. v. United States E.P.A., 25 F.3d 1063, 1071-72 n. 4 (D.C.Cir.1994); LaRouche v. Federal Election Comm'n, 28 F.3d 137, 140 (D.C.Cir.1994)
 
 
 [4]
 The government inexplicably has refused to take a position on the issue
 
 
 [5]
 Hawthorn argues that this court may not consider the Winikoff letters in determining the sufficiency of Society members' claimed injury, because the letters are unsworn statements which do not satisfy the evidentiary requirements of FED.R.CIV.P. 56(e) as is required by Defenders of Wildlife, --- U.S. at ----, 112 S.Ct. at 2137. We agree with the Society and our sister circuits, however, that "Rule 56(e) defects are waived where, as here, no motion to strike is directed to them below." De Cintio v. Westchester County Medical Center, 821 F.2d 111, 114 (2d Cir.) (citing "unanimous accord" on the question from five other circuits), cert. denied, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987)
 
 
 [6]
 A majority of the 83 letters are from Society members living outside of Wisconsin--in fact, all over the country--who learned about the Lota case from reading an article in the Society's newsletter describing her move from the zoo to Hawthorn
 
 
 [7]
 We note that the Society offers no evidence that a court has ever recognized injury from deprivation of the right to view an endangered animal in a "conservation setting" per se (as opposed to another environment such as a circus). The cases the Society relies on do recognize the right to view animals free from "excessive harvesting" or "inhumane treatment," Animal Welfare Institute v. Kreps, 561 F.2d 1002, 1007 (D.C.Cir.1977), cert. denied, 434 U.S. 1013, 98 S.Ct. 726, 54 L.Ed.2d 756 (1978), and find injury in the forced viewing of the "despoliation" of animals and "animal corpses," Humane Soc'y of the United States v. Hodel, 840 F.2d 45, 52 (D.C.Cir.1988). But while we do not decide the question, we note that injury to one's aesthetic interests caused by viewing the destruction of animals is not necessarily analogous to injury based on one's preference for seeing an animal in the zoo rather than in a circus
 
 
 [8]
 Section 1539(1)(A) provides, inter alia, that "the Secretary may permit, under such terms and conditions as he shall prescribe--(A) any act otherwise prohibited by section 1538 of this title for scientific purposes or to enhance the propagation or survival of the affected species...."
 
 
 [9]
 We also need not decide in this case whether Sec. 1539's provisions, which state that the Secretary "may" permit an exemption to be granted, might ever be deemed to constitute a "procedural requirement," Defenders of Wildlife, --- U.S. at ----, 112 S.Ct. at 2142 (emphasis added), of the sort necessary to support a claim of "procedural injury" under the principles of Defenders of Wildlife and our cases
 
 
 [10]
 Hawthorn raises a separate redressability question: whether, under the principle that agency nonenforcement decisions are not reviewable, see Heckler v. Chaney, 470 U.S. 821, 831, 105 S.Ct. 1649, 1655-56, 84 L.Ed.2d 714 (1985), the Secretary could be compelled to order Hawthorn to return Lota to the zoo. We need not reach this issue because even if we assume that such an order could be made, the Society's injury would still not be redressable because the challenged conduct here does not involve Lota's removal from the zoo; it involves the uses Hawthorn may make of Lota now that she is owned by Hawthorn in Illinois